IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRENDAN JOHNSTON, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Plaintiff | ) | |
| v. | ) | Case No.   2:19-cv-2041 |
| | ) | |
| PRAIRIE VIEW, INC., DAVID HON,  GARY | ) | |
| FAST, LAURA HOWARD (*in official capacity as* | ) | |
| Secretary of Kansas Department of Aging and | ) | |
| Disability Services and JASON R LANE, *in his* | ) | |
| *personal and official capacities as* Harvey County | ) | |
| Assistant Attorney | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Brendan Johnston alleges federal and state causes of action for harm resulting from unlawful medical treatment and detention at Prairie View, Inc. in Newton, Kansas and Larned State Hospital between January 29, 2018 and February 5, 2018.  Plaintiff asserts harm from defendants caused  collusively in furtherance of a pattern of racketeering activity having a relationship with an enterprise involved in interstate commerce including the submission of fraudulent medical claims for payment to his Connecticut insurance carrier, Aetna, Inc..

### JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to 42 U.S.C. §1983 for violations of civil rights proscribed by the Fourth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. § 1962 and Kansas state law claims.

2.  The case presents federal questions within this Court's jurisdiction under Article III, § 2 of the United States Constitution, 18 U.S.C. § 1964 and 28 U.S.C. §§ 1331 and 1343.

3.  Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. §1391 because all defendants are subject to personal jurisdiction in this judicial district and reside in this district.

## PARTIES

1.   Plaintiff Brendan Johnston ("Plaintiff") is a divorced father with shared custody of two minor daughters residing in Andover, Butler County, Kansas.  He holds both Bachelor's and Master's degrees in Business Administration from Baker University. He has worked for Spirit Aerosystems in positions of increasing responsibility and pay since September 2006. Prior to January 29, 2018, Plaintiff's medical history included sport-related injuries from playing high school baseball, medication-controlled ADHD and insomnia.

2.  Defendant Prairie View, Inc. ("Prairie View") is a not for profit corporation providing mental health services in South Central Kansas with a principal place of business at 1901 E. 1st St., Newton, Kansas 67114.

3.  Defendant David Hon ("Dr. Hon") is a doctor of psychiatry serving as an inpatient psychiatrist treating Plaintiff at Prairie View between January 29-February 1, 2018 in Newton, Kansas. At all times material hereto, Dr. Hon was an employee and agent of Defendant Prairie View and was acting within the scope of his  employment as it relates his culpable conduct regarding Plaintiff.

4.  Defendant Gary Fast ("Dr. Fast") is a doctor of psychiatry serving as Medical Director who allegedly also provided treatment to Plaintiff at Prairie View between January

29-February 1, 2018 in Newton, Kansas. At all times material hereto, Dr. Fast was an employee and agent of Defendant Prairie View and was acting within the scope of his employment as it relates his culpable conduct regarding Plaintiff. Dr. Fast presumably has served as supervisor of Dr. Hon during all times relevant to this case.

5. Defendant Laura Howard currently serves officially as Interim Secretary of Kansas Department for Aging and Disability Services ("KDADS"). She is named as defendant in this action pursuant to her official duties of oversight for state mental health hospitals, including Larned State Hospital, where Plaintiff was unlawfully transported and detained between February 1-5, 2018.

6. Defendant Jason R. Lane ("Lane") was the Chief Deputy County Attorney for Harvey County, Kansas on February 2, 2018. He filed a sworn affidavit as to Plaintiff's lack of capacity and initiated civil complaint and *ex parte* orders in Harvey County Case 18CT000005 for involuntary confinement of Plaintiff, who was not subject to Lane's jurisdiction at the time of filing.

## STATEMENT OF FACTS

1. In late December 2017-January 2018, Plaintiff developed depression and insomnia subsequent to a series of traumatic experiences. These incidents included the end of a significant relationship, attempted forcible entry of his home by a stranger, and discovery of the horrific details of his cousin Evan Brewer's murder.

2. On Monday, January 29, 2018, the day after Evan's funeral, Plaintiff sought medical care from his life-long physician, Dr. Jed Holmes, for complaints of ADHD medication

withdrawal and sleep deprivation. Unfortunately, Dr. Holmes was out of the office for a vacation and was unable to see Plaintiff at that time.

3. Plaintiff then requested that his father, Kelly W. Johnston, drive him to the Via Christi St. Joseph emergency room, where he was admitted at approximately 11:30 AM. time. There was no indication of aggressive or threatening behavior from Plaintiff in the St. Joseph emergency room.

4. After 7 hours of observation, Via Christi providers diagnosed Plaintiff with Major Depressive Disorder-Single Episode with psychotic symptoms. Rule-out diagnoses included Adderall withdrawal and PTSD. Upon consultation with Julie Belt-Newton, LSCSW, Plaintiff agreed to voluntary inpatient admission to Prairie View. Father drove him to Prairie View in Harvey County, Kansas, where he was admitted at approximately 7:30 PM.

5. Prairie View intake documentation and a treatment plan was completed by 7:00 AM the next day, January 30, 2018. At that time, a plan to be safely dismissed home alone or with family/friends on February 2, 2018 was projected. Plaintiff's Prairie View records indicate a primary concern of monitoring withdrawal symptoms and self-harm ideation, not psychosis. There was no concern of aggression or threats to others evident in Prairie View's intake documentation.

6. By 7:00 PM on January 30, 2018, Plaintiff advised staff he did  not belong at Prairie View and he was safe to go home. On Plaintiff's belief and knowledge, he thereafter executed a document in conformity with a K.S.A. 59-2951(a) written request for discharge.

7. At some point on January 30, 2018, Plaintiff's medication needs were turned over to Dr. Hon from Dr. Fast, and then Dr. Hon advised Plaintiff, "I hope you have a restless night".

8. At approximately 4:00 PM on Wednesday, January 31, 2018, Plaintiff reported to his father that he had gotten some sleep and felt better during a 1.5 hour visit.  Plaintiff did not show any aggressive behavior during the visit, was lucid and could carry on a conversation.

9. At approximately 6:30 PM on Wednesday, January 31, 2018, Plaintiff's cousin Carlo Brewer also visited with Plaintiff, who continued to complain of sleep deprivation.  But he was not aggressive, recognized his cousin and could participate in lucid conversation.

10. Prairie View records corroborate witness reports of Plaintiff's recuperation and inability to sleep at the facility on his second day at the facility on January 31, 2018.

11. On Thursday, February 1, 2018 at approximately 8:30 AM, Plaintiff's father returned a call to Prairie View social worker Molly Sapp during which conversation he was advised of Prairie View's need to schedule an appointment for Friday at 10:00 AM to assess Plaintiff's progress with his family. Ms. Sapp did not indicate at that time that Plaintiff was acting inappropriately or aggressively.

12. Dr. Hon's notes indicate he met with Plaintiff individually between 10:10 AM-10:25 AM on February 1, 2018.  Plaintiff remembers asking Dr. Hon about his prior "restless night" comment during this appointment. Dr. Hon responded, "Ah, you caught that?".

13. Dr. Hon's notes from this visit reflect Plaintiff's dispute with Dr. Hon's care, his intent to discharge and Dr. Hon's admission that he had not yet completed requested forms for Plaintiff.

14. Dr. Hon apparently ordered a new prescription, Risperidone, at 10:26 AM after Plaintiff asserted his disputes as to Dr. Hon's care and his intent to be dismissed from Prairie View. The prescription was authorized to treat Plaintiff for "psychosis".

15. Even though her notes strangely do not include a timestamp, Ms. Sapp's notes also indicate two meetings with Plaintiff before 11:53 AM on February 1 to discuss Plaintiff's signing of legal forms.    There is no indication of Plaintiff exhibiting aggressiveness or psychosis in these notes.

16. Group Therapy records indicate that from 11:19 AM to 11:53 AM on February 1, 2018, "B. entered later, but participated appropriately throughout group, appeared engaged, and contributed verbally to discussion".

17. According to Dr. Hon's records, at approximately 11:58 AM, five minutes after Group Therapy, Plaintiff threatened staff and could not be redirected. He was restrained and placed in seclusion at 12:18 PM after a 20 minute incident in which the following occurred:

"On 02/01/2018, he became markedly agitated (sic) and suddenly grabbed a patient who was in a wheelchair, pushing her down the hallway as he yelled that staff was trying to poison her and her food and that he had to get her away from staff. In the process, he threw a food tray part of the way across (sic) the room, started yelling paranoid thoughts, and took a threatening posture towards staff, so a show of force was called since he was totally not redirectable, despite 20 minutes or more of our Unit Director and other staff trying to calm him. He had to physically be taken into seclusion for his protection and the protection of staff and other patients. It was clear that, if not for a large show of force, his behaviors would have escalated into violence directed at staff or his peers."

18. Dr. Hon was not present for this alleged incident.

19. Plaintiff recalls the incident. The lunch tray fell out of his hand. He pushed the other patient's wheelchair towards her own room because she asked him to. He resisted restraint when two employees grabbed him. He called out for someone to help him. He was battered, thrown into a seclusion room and administered a shot in his shoulder that caused significant bruising. Plaintiff was neither violent nor threatening at any time.

20. Dr. Hon's notes indicate that he had an injection of potent sedatives prepared for Plaintiff at the time of the above-described incident occurring at 11:58 AM.

21. At approximately 1:00 PM on February 1, 2018, Plaintiff's father received another phone call from Ms. Sapp.  She advised Plaintiff had acted aggressively at lunchtime and was currently in pre-screening for transport and care to Larned State Hospital.

22. Father told Ms. Sapp, "Under no circumstances will I agree to my son being transported to Larned", and advised Prairie View should expect him to arrive at the facility later that afternoon for a discussion of care with Dr. Hon.

23. Subsequent to the disturbing call from Ms. Sapp, Father then contacted psychiatrist Dr. Elsie Steelberg for advice. Dr. Steelberg did not have a prior treatment relationship with Plaintiff. Dr. Steelberg is a board-certified psychiatrist practicing at Advocates for Behavioral Health in Wichita. She also is a former employee of Prairie View.

24. Dr. Steelberg suggested that, rather than discharging him to Larned, Prairie View should calm Plaintiff with medication. Dr. Steelberg consented to the disclosure of her name and advice to Prairie View.

25. Father then delivered Dr. Steelberg's recommendation to Prairie View. Dr. Hon's records dictated on February 2, 2018 indicate his acknowledgment of Dr. Steelberg's recommendation.

26. Plaintiff's attorney, the undersigned Shayla Johnston, contacted Prairie View at 1:36 PM, disclosed her relationship to Plaintiff as his attorney, and stated clearly her objection to further treatment and transport to Larned. She was advised Dr. Hon would return her call and answer her concerns. Dr. Hon never returned her call.

27. At 4:00 PM on the same day of February 1, 2018, Plaintiff's father and mother, LaDeena Johnston,  arrived at Prairie View to object to their son's involuntary transport and admission to Larned State Hospital, and to visit their son.

28. Vince Tafolla, a Unit Manager at Prairie View, took Plaintiff's parents into his office, reported the events of the day involving Plaintiff's alleged agitation, advised that Prairie View was not equipped to handle patients who were a risk to others, and stated that the facility had no choice but to send Plaintiff to Larned.

29. Plaintiff's parents requested to discuss options with Dr. Hon. Mr. Taffolla was advised as to Dr. Steelberg's recommendations, and that the parents had no objection to Plaintiff remaining on the limited access hall.  The parents were then escorted outside of Mr. Taffolla's office, and they then observed through the glass that Mr. Taffola was making a call, which they presumed was to Dr. Hon.

30. After hanging up, around 4:30 PM, Mr. Taffolla advised Plaintiff's father that Dr. Hon said it was too late as Plaintiff was already being pre-screened for admission to Larned.

Father then produced his law firm business card to Mr. Taffolla and demanded to speak with a Prairie View attorney.

31. At 5:05 PM, Mr. Taffolla advised Father that no attorneys were available to speak to him. However, Mr. Taffolla notified Father that Dr. Hon would speak with him.

32. Father was next escorted to a "limited access" room where he saw his son laying on a pallet on the floor unrestrained. Father laid down on the pallet next to his son and hugged him.

33. Father then waited until 5:31 PM for Dr. Hon to arrive. At that point Father decided that Dr. Hon had no intention of meeting him, and left the facility.

34. Dr. Hon's notes acknowledge that he found Father's insistence to speak with him as an act of intimidation to persuade staff against providing Plaintiff necessary care and treatment.

35. There is no indication that Dr. Hon recognized Father's request for conference as a statutory obligation per K.S.A. 59-2955(a)(2) as of 12:18 PM on February 1, 2018 pursuant to K.S.A. 59-2954(c).

36. Plaintiff's cousin Carlo Brewer arrived at Prairie View at approximately 6:00 PM on February 1, 2018, and was advised he was not permitted to see Plaintiff.

37. Father called Prairie View at approximately 10:00 PM on February 1, 2018. He was advised that transport to Larned had just arrived. Again, Father asserted the need to register his objection to the transport to Larned. The contact person said the objection would be noted in Plaintiff's chart.

38. At 10:12 PM, Plaintiff's attorney again called Prairie View and demanded cessation of transport and objected again to further treatment. The contact person indicated the transport could not be stopped and urged the attorney to register complaint the next day.

39. At 10:40 PM on February 1, 2018, Plaintiff was transported to Larned State Hospital in Pawnee County, Kansas.

40. On Friday, February 2, 2018 at approximately 9:00 AM, Ms. Johnston filed Public Adverse Incident Report 15811 for abuse, illegal transport, insurance fraud and HIPAA violation for actions taken against Plaintiff by Prairie View Hospital and Dr. Hon. (See Public Adverse Incident Report 15811 dated 2.2.18).

41. At approximately 10:00 AM, Ms. Johnston filed complaint T18000018 with the City of Newton Police Department for insurance fraud by Dr. Hon and Prairie View for aggravating severe insomnia and causing Plaintiff to become aggressive so as to justify transport to Larned for the purpose of fraudulently billing Aetna Insurance. (See City of Newton Police-Insurance Fraud Complaint dated 2.2.18).

42. At approximately 11:00 AM, Ms.  Johnston made complaint to "Betty" in administration at Prairie View for a HIPAA violation, insurance fraud, failing to properly medicate and aggravating symptoms of insomnia.

43. At approximately 11:15 AM, Ms. Johnston left a voicemail message with Darren Root, Counsel for Kansas State Hospitals. Mr. Root returned her call at approximately 1:00 PM that same day and gave her general instructions related to appealing treatment decisions, hearing procedure and advised to send him a release from Plaintiff so he could facilitate more detailed discussions about the case with her.

44. At approximately 11:30 AM, Ms. Johnston contacted Aetna Insurance and was advised as to the process for flagging charges for fraud. She then contacted Stacey Carr in patient accounts at Larned and advised that a fraud alert had been placed on any billing from their facilities pertaining to Plaintiff.

45. On Friday, February 2, 2018 at 2:44 PM, Defendant Lane filed a Petition to determine Plaintiff to be mentally ill and subject to involuntary commitment for care and treatment in Harvey County case 18CT000005. The Petition was filed more than 12 hours after Butler County resident Plaintiff left Harvey County jurisdiction.

46. Per Kansas Statutes, such Petition "may be filed in the district court of the county wherein that person resides or wherein such person may be found." See K.S.A. 59-2957(a).

47. The Petition was supported by Lane's sworn affidavit, and contained the following *prima facie* invalid information:

   a. Plaintiff was currently a patient at Prairie View with "present whereabouts" at Larned State Hospital, Larned, Kansas.
   b. Plaintiff was an emergency admission to Prairie View.
   c. Plaintiff had been a patient of Prairie View since January 1, 2018.
   d. Plaintiff's mental health diagnosis was "recurrent".
   e. Plaintiff lacked mental capacity to make informed decisions about his care and treatment (which would include the capacity to legally sign documents).
   f. The names of Plaintiff's nearest relatives and legal counsel were shown as "None".

48. On Friday, February 2, 2018, Plaintiff spoke with his father on least two occasions via telephone at Larned State Hospital. Plaintiff complained that he was not sleeping well, but otherwise was lucid and could participate in normal conversation.

49. Plaintiff also spoke with his cousin Carlo Brewer via telephone at Larned State Hospital that day. Plaintiff complained of sleep deprivation, but was lucid and could participate in normal conversation.

50. On Saturday, February 3, 2018, Plaintiff advised Larned staff that he wanted to be released. He was advised that release was conditional on a decision by his treatment team, which could not convene until Monday. Plaintiff was advised that a court hearing would be conducted Monday afternoon to determine whether there was cause to keep Plaintiff longer against his will.

51. At approximately 1:26 PM on February 3, 2018, Ms. Johnston received a call from Jessie Kaye, Prairie View CEO, who apologized for the failure to return phone calls previously. Ms. Kaye advised to call and discuss the situation on Monday with Prairie View's Risk Manager Kelvin Bartel.

52. On Sunday, February 4, 2018 at approximately 1:44 PM, Ms. Johnston spoke with Plaintiff and his father on an unsecured telephone line to discuss the pending hearing scheduled for the next day. Plaintiff advised that he was not aware of speaking with another attorney about *ex parte* orders, had not seen a petition or other court-related paperwork. Plaintiff consented to not appear in person for the hearing. He also reported that he could not sleep at the facility, that he was cold and the showers did not have hot water. Plaintiff sounded tired but fully lucid.

53. Ms. Johnston thereafter called Larned staff and advised of Plaintiff's complaints of inadequate bed covering, clothing, lack of heat and showering in cold water.

54. On Monday, February 5, 2018 at approximately 9:00 AM, Ms. Johnston contacted Harvey County Probate Court, was referred to Plaintiff's appointed attorney of record Don Sapp who agreed to withdraw from Plaintiff's representation and to forward her any court paperwork in his possession.

55. Ms. Johnston then spoke with Defendant Lane who was uncooperative in facilitating release of Plaintiff. He advised the hearing for continued involuntary placement would be Tuesday rather than Monday because of an emergency courthouse shutdown.  Lane advised that Ms. Johnston should proceed with filing a motion to dismiss.

56. At approximately 4:00 PM on Monday, February 5, 2018, Plaintiff was released from Larned State Hospital. His diagnosis was "Adderall-induced psychosis non-use". He was scheduled to see psychiatrist Dr. Steelberg the next day at 4:00 PM.

57. On Tuesday, February 6, 2018 at approximately 9:00 AM, Ms. Johnston contacted Rosalee with Harvey County Judge Marilyn Wilder's chambers and was advised that there would be no hearing on the probate case because Lane's office had dismissed the petition for care and treatment.

58. On Tuesday, February 6, 2018 at approximately 11:00 AM, Lt. Ball from Newton Police Department advised Ms. Johnston to forward details and documents related to the treatment of Plaintiff Johnston by Dr. Hon between January 29-February 1, 2018.

59. To the best of Plaintiff's knowledge, restoration of Plaintiff's rights was not accomplished as required by K.S.A. 59-2974.

60. To the best of Plaintiff's knowledge, no certificate of restoration was forwarded to the Kansas Bureau of Investigation subsequent to his discharge pursuant to K.S.A. 59-2974.

61. Harvey County Attorney's Office failed to prosecute the case pursuant to K.S.A. 59-2980.

62. Plaintiff returned to work full time on March 16, 2018.

63. Plaintiff incurred lost wages from January 30-March 15, 2018, totaling $15,200.00.

64. Plaintiff has incurred damages resulting from Defendants' actions, including an outstanding bill from Larned State Hospital for $1588.48.

65. Plaintiff is unaware whether costs were assessed for his court appointed attorney, his transportation to Larned State Hospital and/or for the prosecution of his care and treatment case pursuant to K.S.A. 59-2981, but submits that to date, no such costs have been received by him or his estate.

## COUNT I: 18 U.S.C. § 1962

1. Plaintiff restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

2. Plaintiff is a person-victim who has been injured in business or property by reason of Defendants' actions in furtherance of pattern of racketeering activity having a relationship with an enterprise which is involved in interstate commerce.

3. As to culpable persons:

   a. Prairie View was a Culpable Person as to Plaintiff, because the entity was capable of holding a legal or beneficial interest in Plaintiff's property via *ex parte* orders of legal custody initiated pursuant to Article 29 of Chapter 59 of the Kansas Statutes Annotated.

b.  Defendants Hon and Fast were culpable persons as to Plaintiff, because the parties had legal power, as qualified mental health professionals, to issue determinations and/or reports that could create a legal or beneficial interest in Plaintiff's property for themselves or their employer via *ex parte* orders of legal custody initiated pursuant to Article 29 of Chapter 59 of the Kansas Statutes Annotated.

c.  Defendant Howard represents KDADS. Her agency is a "culpable person" as to Plaintiff because KDADS had legal power to create a beneficial interest in Plaintiff's property via ex parte orders of legal custody initiated pursuant to Article 29 of Chapter 59 of the Kansas Statutes Annotated and received a complaint on February 2, 2018 about Plaintiff's unlawful detainment.

d.  Defendant Lane is a "culpable person" as to Plaintiff because he had legal power to create a beneficial interest for Harvey County to charge Plaintiff's county of residence and Plaintiff's estate for costs related to Plaintiff's court appointed attorney, civil prosecution and other non-medical charges related to the filing of a civil care and treatment petition and *ex parte* orders of custody pursuant to Article 29 of Chapter 59 of the Kansas Statutes Annotated.

4.  Defendants are a group of individuals associated in fact in the procurement of involuntary legal custody of persons in Harvey County, Kansas via Article 29 of Chapter 59 of the Kansas Statutes Annotated.

5.  The activity of the enterprise between Defendants affects interstate commerce.

6.  Defendants' actions constitute a pattern of racketeering of at least two acts occurring within ten years as to Plaintiff, in that even after legal action and notice of complaint

were effectuated to all parties by February 3, 2018, Defendants failed to release Plaintiff immediately, failed to pursue malicious prosecution of Defendant Hon, and failed to file a required statutory notice to the Kansas Bureau of Investigation subsequent to the expiration of *ex parte* orders on February 5, 2018.

7. Defendants' actions had the same or similar distinguishing characteristics and were part of a continuous, close-ended scheme as to Plaintiff that was intended to produce financial benefit to all defendants for at least 30 days. But for Plaintiff's advantage of coming from a family of attorneys, there is no doubt Plaintiff would have incurred substantial damages.

8. Based upon the undersigned's experience, the actions of Defendants are part of a continuous pattern and practice of racketeering in the State of Kansas to utilize unlawful *ex parte* orders to procure state custody of persons for the purpose of financial gain by State agencies and counties since 2013.

9. Based upon the above and foregoing, Defendants attempted to, or actually committed, wire and/or mail fraud, engaged in monetary transactions in property derived from specified unlawful activities and/or interfered with commerce by threats or violence against Plaintiff on the dates and times specified above through acts designed to transfer funds to defendants via collection of monies for unlawful submissions to Aetna Inc., Plaintiff's county of residence (Butler) and Plaintiff's estate for unnecessary medical care, battery, false imprisonment, kidnapping by unlawful transport, unauthorized and *ex parte* legal representation and malicious prosecution.

10. Plaintiff sustained injury to his business or property by reason of the overt acts committed in further of the conspiracy to collect monies from fraudulent and/or malicious claims to

Aetna Inc., Plaintiff's county of residence (Butler) and Plaintiff's estate for unnecessary medical care, battery, false imprisonment, kidnapping by unlawful transport, unauthorized and *ex parte* legal representation and malicious prosecution.

## COUNT II: 42 U.S.C. § 1983 AND § 1988 DEPRIVATIONS

Pursuant to 42 U.S.C. § 1983 and § 1988, for the following specific abuses of power by persons acting under color of state law to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution.

**A.    As to Defendant Howard, Plaintiff asserts as follows, incorporating relevant facts as noted above:**

1. Defendant Howard, through her current position, has acted under color of state law to act with knowledgeable acquiescence to deprive Plaintiff of legal rights, privileges or immunities to further an enterprise to collect monies from fraudulent and/or malicious claims to Aetna Inc., Plaintiff's county of residence (Butler) and Plaintiff's estate for unnecessary medical care, battery, false imprisonment, kidnapping by unlawful transport, unauthorized and *ex parte* legal representation and malicious prosecution as a person under the care, custody and control of KDADS between February 1-February 5, 2018.

2. Defendant Howard's knowing acquiescence in such activity conforms with customs and decisions of authorities with final policymaking authority and responsibility as to State custody of persons in Kansas.

3. Defendant Howard violated Plaintiff's clearly established Constitutional rights as a reasonable person would have prevented such unlawful activities against those in State custody and would have ensured proper follow up by report to KBI subsequent to receipt

of Plaintiff's Public Adverse Incident Report 15811 on February 2, 2018 at approximately 9:00 AM.

4. Defendant Howard is sued in her official capacity for fees or costs deriving from her agency's participation in acts of harm against Plaintiff.

**B.    As to Defendant Lane, Plaintiff asserts as follows, incorporating relevant facts and as noted above:**

1. As Chief Deputy County Attorney, Defendant Lane performs administrative, advocacy, prosecutorial and investigative duties for Harvey County, Kansas.

2. Defendant Lane exercised duties as an investigator, and not as a prosecutor, as to Dr. Hon's request for involuntary detainment of Plaintiff on or about February 2, 2018.

3. Defendant Lane signed a sworn affidavit as to his good faith belief in the constitutionality or legality of the involuntary detainment of Plaintiff, and swore that his belief was reasonable under the circumstances.

4. Defendant Lane, however, initiated a *prima facie* invalid civil petition for care and treatment of Plaintiff, and for *ex parte* orders to take legal custody of Plaintiff, in absence of personal jurisdiction over Plaintiff. These acts were not reasonable under the circumstances.

5. Defendant Lane also initiated a *prima facie* invalid civil petition for Plaintiff's care and treatment, and for *ex parte* orders to take legal custody of Plaintiff, while admitting Plaintiff had submitted a written request for discharge and while knowingly refusing to produce such written request at any time in the last year. These actions were not reasonable under the circumstances.

6. Defendant Lane is sued in his official capacity for injunctive and declaratory relief and fees or costs deriving therefrom, in that Plaintiff requests ordered compliance with statutory obligations to certify termination of his case, restore all legal privileges and for submission of his case by Defendant Lane to KBI.  He is also sued in his personal capacity for damages caused by his investigatory acts.

7. Defendant Lane's acts violated clearly established Constitutional rights, as a reasonable person would have rejected Dr. Hon's request for involuntary detainment of Plaintiff upon a *prima facie* investigation of Dr. Hon's requesting correspondence.

## COUNT III: VIOLATION OF FOURTH AND FOURTEENTH AMENDMENT RIGHTS PER 42 U.S.C. §1983

1.  Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.

2. References to the Fourth Amendment are incorporated as applied to the states through the Fourteenth Amendment.

3. Plaintiff was subject to unlawful search and seizure in a collusive effort between State actors, their agencies and affiliated non-governmental associates.

## COUNT IV: MALICIOUS PROSECUTION

1. Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.

2. Between January 29 and February 5, 2018, Defendants Dr. Hon, Dr. Fast and Lane initiated, continued, or procured civil procedures against the plaintiff to unlawfully search and seize Plaintiff and unlawfully cause his detention in a state mental institution.

3. The Defendants in so doing acted without probable cause.

4. The Defendants acted with malice, in that they acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings were allegedly based, meaning there was not a *prima facie* case for the involuntary detainment of Plaintiff pursuant to Article 29 of Chapter 59 of the Kansas Statutes Annotated at any time between January 29-February 5, 2018.

5. The proceeding, known as Harvey County Case 18CT000005, terminated in favor of the Plaintiff.

6. Plaintiff has sustained damages in lost wages, medical costs, loss of legal privileges, stress, and other legal damages as a result of Defendants' collusive malicious prosecution.

7. Defendant Prairie View is vicariously liable for the intentional and reckless acts against Plaintiff which were committed within the scope of its employees' duties.

## COUNT V: ASSAULT

1. Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.On February 1, 2018, Defendants Dr. Hon and Dr. Fast caused Plaintiff reasonable apprehension of imminent harmful or offensive contact when they refused to honor his lawful request for release and instead endeavored to aggravate his insomnia in an effort to exacerbate psychosis via sleep deprivation.

2. Plaintiff has sustained damages in lost wages, medical costs, loss of legal privileges, stress, and other legal damages as a result of Defendants' assault.

3. Defendant Prairie View is vicariously liable for these intentional and reckless acts against Plaintiff which were committed within the scope of its employees' duties.

## COUNT VI: BATTERY

1. Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.

2. On February 1, 2018, Defendants Dr. Hon and Dr. Fast intentionally caused an injection to be administered to Plaintiff, and intentionally provoked an unwarranted physical altercation with Plaintiff.

3. These incidents were unprivileged, unjustified, harmful and/or offensive bodily contacts upon Plaintiff.

4. The contacts were not made in the good faith administration of medical care.

5. Plaintiff sustained bruising and incapacity as a result of Defendants' actions.

6. Defendant Prairie View is vicariously liable for these intentional and reckless acts committed upon Plaintiff which were committed within the  scope of its employees' duties.

## COUNT VI: FALSE IMPRISONMENT

1. Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.

2. Plaintiff, his parents and attorney asserted demand for a voluntary release from Prairie View on January 30, 2018.

3. Plaintiff's personal freedom was thereafter deprived by Dr. Hon and Dr. Fast via words, threats, acts, personal violence and chemical and physical restraint.

4.  Plaintiff sustained bruising, incapacity, stress, lost wages, medical costs, loss of legal privileges and other legal damages arose as a direct result of Defendants' intentional actions.

5.   Defendant Prairie View is vicariously liable for these acts committed upon Plaintiff which arose within the scope of its employees' duties.

## COUNT VII: FRAUD

1.  Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.

2.  Between January 29 and February 5, 2018, Defendants Dr. Hon, Dr. Fast and Lane made false or untrue representations that Plaintiff was mentally incapacitated and in need of involuntary detainment due to risk of physical harm to others as statements of existing and material fact.

3.  These representations were known to be false or untrue by Defendants at the time stated, or they were made in bad faith and with reckless disregard of the truth or falsity of  the statements.

4.  The representations were intentionally made for the purpose of inducing a court to issue ex parte orders of legal custody, to persuade Larned State Hospital to transport and admit Plaintiff prior to obtaining orders, and for the purpose of causing receipt of funds for submissions of reimbursement for the costs of Plaintiff's unlawful detainment and prosecution.

5. Indeed, Harvey County Judge Marilyn Wilder reasonably relied and acted upon the representations made and issued ex parte orders for Plaintiff's involuntary detainment in Harvey County even after Plaintiff was no longer under her jurisdiction.

6. Larned Hospital also reasonably relied and acted upon the representations made by transporting and accepting admission of Plaintiff prior to the receipt of court orders.

7. Plaintiff sustained stress, lost wages, medical costs, loss of legal privileges, and other legal damages as the result of Defendants' actions.

8. Defendant Prairie View is vicariously liable for these intentional acts committed upon Plaintiff, which were committed within the the scope of its employees' duties.

## COUNT VIII: DEFAMATION

1. Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.1.

2. Between January 29 and February 5, 2018, Defendants Dr. Hon, Dr. Fast and Lane intentionally communicated false information about Plaintiff's risk of harm to others and his mental capacity that created a public image of untrustworthiness and unreliability and tended to deprive Plaintiff of the benefits of public confidence and social acceptance.

3. Plaintiff sustained stress, lost wages, medical costs, loss of legal privileges, and other legal damages as a direct result of Defendants' actions.

4. Defendant Prairie View is vicariously liable for these intentional acts committed upon Plaintiff which were committed within the scope of its employees' duties.

### COUNT IX: INVASION OF THE RIGHT TO PRIVACY

1. Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.

2. Between January 29 and February 5, 2018, Defendants Dr. Hon, Dr. Fast and Lane intentionally intruded upon Plaintiff's solitude or seclusion by forcibly detaining him without legal justification or probable cause.

3. Defendants misrepresented this intrusion for their own gain  through publication in court documents and insurance forms.

4. This intrusion was highly offensive to Plaintiff and would be considered highly offensive to a reasonable person.

5. Plaintiff sustained stress, lost wages, medical costs, loss of legal privileges, and other legal damages as the result of Defendants' actions.

6. Defendant Prairie View is vicariously liable for these intentional acts committed upon Plaintiff which  occurred within the scope of its employees' duties.

### COUNT X: OUTRAGE

1. Plaintiff restates and incorporates by reference relevant facts contained in the preceding paragraphs of this Complaint.

2. Between January 29 and February 5, 2018, Defendants Dr. Hon, Dr. Fast and Lane intentionally and/or recklessly caused Plaintiff severe emotional distress through the extreme and outrageous conduct of aggravating his insomnia, fabricating an incident of aggression, forcibly detaining, transporting and restraining him and refusing to discharge their statutorily-required obligations pursuant to the Kansas Care and Treatment Act.

3. Plaintiff sustained extreme mental distress, lost wages, medical costs and loss of legal privileges as the result of Defendants' actions.

4. Defendant Prairie View is vicariously liable for these intentional acts committed upon Plaintiff which occurred within the scope of its employees' duties.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and award the following relief jointly and severally against Defendants, or individually as appropriate:

1. Compensatory damages sustained to Plaintiff, including lost wages and medical costs;

2. Non-pecuniary damages;

3. Federal appointment of trustee and removal of officers if so necessitated at Prairie View so as to estop and prevent  property, personnel, services and revenue from the entity being used to further an illegal enterprise;

4. Federal appointment of trustee and removal of officers if so necessitated at the Harvey County Attorney's Office and/or Harvey County Probate Court so as to estop and prevent property, personnel, services and revenue from the entity being used to further illegal enterprise;

5. Award Plaintiff his costs and treble attorneys' fees in this action; and,

6. Such other relief as this Court may deem just and proper, including but not limited to prospective and/or retroactive injunctive relief for any injustice for which relief in the form of legal damages is inadequate, declaratory relief, punitive damages, pain and

suffering, statutory damages (including treble damages and/or fines), reimbursement of funds paid or lost, class action certification, attorneys fees and/or costs.

7. Plaintiff asserts such damages exceed $75,000.00

## PLACE FOR TRIAL

Pursuant to D. Kan. Local Rule 40.2, Plaintiff designates Kansas City, Kansas as the place for trial.

Respectfully submitted,

**EXCELLENCE LEGAL, LLC**

Respectfully submitted,

/s/ Shayla Johnston
Shayla Johnston, KS S Ct #19446
EXCELLENCE LEGAL, LLC
234 S. Topeka St.
Wichita, KS 67202
316-530-5886 (office)
316-462-5522 (fax)
johns@excellencesvcs.org (email)
Attorney for Plaintiff