IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRENDAN JOHNSTON,

      Plaintiff,

      v.                                 Case No. 2:19-cv-02041-HLT

PRAIRIE VIEW, INC., et al.,

      Defendants.

## MEMORANDUM AND ORDER

On January 29, 2018, Plaintiff Brendan Johnston was voluntarily admitted to Prairie View, Inc. for mental health treatment. Plaintiff was then involuntarily transferred to Larned State Hospital ("LSH") on February 1, 2018 and released on February 5, 2018. During that time, two related civil complaints for emergency involuntary commitment were initiated, in Harvey County, Kansas and Pawnee County, Kansas. Based on his treatment while at Prairie View and LSH, Plaintiff filed the instant case against eleven Defendants, bringing a total of twelve claims—four federal and eight state-law claims.[1] Seven of these claims are against Defendant Jason Lane in his official and individual capacities as Chief Deputy County Attorney for Harvey County, Kansas. Nine of the claims are against Defendants Prairie View Inc., David Hon, M.D., Gary Fast, M.D., and Brent Ide (collectively, "Prairie View Defendants").

Defendant Lane filed a motion to dismiss the claims against him (Doc. 55), and Prairie View Defendants also filed a motion to dismiss the claims against them (Doc. 50). The Court takes

---

[1] Seven state-law claims remain. Plaintiff has since voluntarily dismissed a claim of fraud against all Defendants. Doc. 81 at 1; 15 n.46; 16 n.51; and 49.

up both motions together. For the following reasons, the Court dismisses all the federal claims and declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

## I.        BACKGROUND

Defendant Prairie View is a not-for-profit corporation that provides mental health services in Newton, Kansas. Defendant Hon was an inpatient psychiatrist who treated Plaintiff at Prairie View between January 29 and February 1, 2018. Defendant Hon supervised Defendant Ide, LCMSW, who completed a mental health screening form on February 1, 2018, before Plaintiff was transferred to LSH. Defendant Fast serves as Medical Director at Prairie View and was Defendant Hon's supervisor. Defendant Lane was the Chief Deputy County Attorney for Harvey County, Kansas at the relevant time.

Although Plaintiff initially was voluntarily admitted to Prairie View on January 29, 2018, he alleges that he revoked his consent for further services on January 30, 2018. After Plaintiff revoked his consent for treatment at Prairie View, he claims that a series of disturbing events happened. The details of those events are not important for resolution of Plaintiff's claims below. Highly summarized, Prairie View Defendants assert that Plaintiff was involved in a purported violent incident (which Plaintiff denies). Plaintiff claims that he was given a sedative he did not need and was prepared for transfer to LSH and transferred to LSH over his own objection as well as the objection of his family members. He claims that Prairie View Defendants were non-responsive to his family members' pleas and requests while initiating paperwork for civil commitment proceedings.

As part of the screening process for transfer to LSH, a staff member faxed to Defendant Lane "documentation legally required for Plaintiff's transfer and to initiate civil proceedings for his involuntary care and treatment." Doc. 42 at 18. Defendant Lane then prepared a Verified

Petition for Involuntary Commitment, which he filed in the District Court of Harvey County at 2:44 p.m. on February 2, 2018—after Plaintiff had already been transferred to LSH in Pawnee County. Plaintiff claims that the Verified Petition contains the following "prima facie" invalid information:

      a.  Plaintiff was currently a patient at Prairie View with "present whereabouts at Larned State Hospital, Kansas."

      b.  Plaintiff was an emergency admission to Prairie View.

      c.  Plaintiff had been a patient of Prairie View since January 1, 2018.

      d.  Plaintiff's mental health diagnosis was "recurrent."

      e.  Plaintiff lacked mental capacity to make informed decisions about his care and treatment (which would include the capacity to legally sign documents).

      f.  The names of Plaintiff's nearest relatives and legal counsel were shown as "None."

*Id.* at 19.

Plaintiff was involuntarily admitted to LSH from February 1 through February 5, 2018. Plaintiff had private insurance, which covered a portion of his bill for his stay. LSH billed Plaintiff for the remainder, totaling $1588.48. Plaintiff claims that he "is unaware whether costs were assessed for his court appointed attorney, his transportation to [LSH] and/or for the prosecution of his care and treatment case pursuant to K.S.A. 59-2981, but submits that to date, no such costs have been received by him or his estate." Doc. 42 at 23. Plaintiff makes no allegations of being billed for services at Prairie View. According to Plaintiff, this case is about Defendants' joint efforts to "extort collection of non-consensual professional services through private insurance or estate seizure, effectuated with the assistance of fraudulent civil commitment proceedings." Doc. 81 at 1.

Plaintiff makes the following allegations with respect to Defendant Lane, as clarified in his response brief:

> Lane is sued in both personal and official capacity pursuant to his duties as an investigator and/or witness undertaken as part of his duties as Harvey County Chief Deputy County Attorney for his direct involvement in initiating civil commitment proceedings swearing to probable cause for emergency need of involuntary commitment of Plaintiff to [LSH] on February 5, 2018 when Plaintiff was not within his jurisdiction, for intentionally taking multiple acts in furtherance of obstructing Plaintiff's counsel of choice, for facilitating concealed secondary prosecution of the same in another county without advising Plaintiff's attorney and for terminating proceedings in ex parte communications with the court to the exclusion of Plaintiff's counsel. Lane is also accused of failing to correct mistakes in his records upon discovery.

Doc. 81 at 16–17.

## II.      STANDARD

As explained below, Defendant Lane moves for dismissal alternatively under Rule 12(b)(6) and Rule 12(c). Prairie View Defendants only move for dismissal under Rule 12(b)(6). A court will dismiss a cause of action pursuant to Rule 12(b)(6) under two circumstances. First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Second, dismissal is likewise appropriate where the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow a court to draw the reasonable inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court must accept well-pleaded factual allegations as true, this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id.* at 678–79.

As also explained below, the Court does not consider dismissal of Plaintiff's claims under Rule 12(c). But Defendant Lane does raise one argument that is more appropriately considered under the standards of Rule 12(b)(1) instead of Rule 12(b)(6): the argument that he is entitled to Eleventh Amendment immunity. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (noting that "an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court"). The Court therefore considers this argument under the standards of Rule 12(b)(1) instead of 12(b)(6). *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1168 (10th Cir. 2012) (stating that "'the question whether [a] suit states a claim upon which relief can be granted is [not] coincident in scope with [an] Eleventh Amendment inquiry'") (citation omitted); *Davis v. California*, 2017 WL 4758928, at *1 (D. Kan. 2017) (construing Rule 12(b)(6) motion as a Rule 12(b)(1) motion because the defendants were seeking dismissal based on sovereign immunity and comity, which are both matters of subject-matter jurisdiction); *Moreno v. Kan. City Steak Co.*, 2017 WL 2985748, at *3 (D. Kan. 2017) ("Despite the Rule 12(b)(6) label defendant places on its Motion to Dismiss, the court must construe it as a motion under Rule 12(b)(1) if the question it presents is jurisdictional.").

Motions to dismiss for lack of jurisdiction under Rule 12(b)(1) can generally take two forms: a facial attack or a factual attack. "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In that situation, the allegations in the complaint are accepted as true. *Id.* Defendant Lane has not submitted any evidence, so the Court considers his attack a facial attack. The burden is on Plaintiff—the party asserting this Court's jurisdiction—to establish subject matter jurisdiction. *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) (citation omitted).

The Court examines Plaintiff's claims with these criteria in mind.

## III.    ANALYSIS

### A.    Plaintiff's Procedural Argument Applying to Defendant Lane

Plaintiff first asks the Court to deny Defendant Lane's motion outright as untimely because Defendant Lane filed an answer to Plaintiff's original complaint before filing this motion to dismiss or motion for judgment on the pleadings (which is targeted at the amended complaint). As Plaintiff correctly points out, a Rule 12(b)(6) motion to dismiss is not proper after an answer is filed. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); *Swearingen v. Honeywell, Inc.*, 189 F. Supp. 2d 1189, 1193 (D. Kan. 2002) ("Technically, it is impermissible under the Federal Rules to submit an answer and thereafter file a Rule 12(b)(6) motion to dismiss."); *see also Humes v. Cummings*, 2019 WL 1596579, at *3 (D. Kan. 2019). Although the Court may convert a motion to dismiss to one for judgment on the pleadings if an answer has been filed, *Hampton v. Barclays Bank Del.*, 2019 WL 3453570, at *2 (D. Kan. 2019) (citation omitted), a motion for judgment on the pleadings is not ripe until all defendants have filed answers (which has not happened here). *See* Fed. R. Civ. P. 12(c) (permitting a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial"); *Hampton*, 2019 WL 3453570, at *2 (citations omitted). For the following reasons, the Court only addresses Plaintiff's argument treating Defendant Lane's motion as one to dismiss; it is unnecessary to construe the motion as one for judgment on the pleadings.[2]

For ease of reference, the Court lays out the following chain of relevant events:

- <u>January 24, 2019</u>: Plaintiff filed his original complaint. Doc. 1.

---

[2]    This analysis does not apply to the portion of Defendant Lane's motion that the Court has construed as seeking 12(b)(1) dismissal. Lack of subject matter jurisdiction may be raised at any time. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

- <u>March 26, 2019</u>: Defendant Lane filed a motion to dismiss. Doc. 19.

- <u>March 26, 2019</u>: Defendant Lane filed an answer to the original complaint. Doc. 21.

- <u>July 1–2, 2019</u>: Plaintiff moved for leave to file a first amended complaint. Docs. 31-32.

- <u>July 8, 2019</u>: Judge Murguia denied Defendant Lane's motion to dismiss as moot and without prejudice in light of the pending motion to amend. Doc. 33.

- <u>October 21, 2019</u>: Plaintiff's motion to file a first amended complaint was granted. Doc. 41.

- <u>November 1, 2019</u>: Plaintiff filed his first amended complaint. Doc. 42.

- <u>December 13, 2019</u>: Defendant Lane filed a motion to dismiss the first amended complaint, which is the motion now before the Court. Doc. 55.

- <u>December 13, 2019</u>: Defendant Lane filed an answer to the first amended complaint. Doc. 57.

When Plaintiff filed his first amended complaint, such filing nullified the original complaint. *See Thundathil v. Sessions*, 709 F. App'x 880, 884 (10th Cir. 2017); *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) ("[A]n amended complaint 'supersedes an original complaint and renders the original complaint without legal effect.'") (citation omitted); Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.").

Because the original complaint no longer was in effect, Defendant Lane's original answer was also moot and without legal effect. *See Janzen v. Watonga Hosp. Tr. Auth.*, 2012 WL 3921524, at *1 (W.D. Okla. 2012) ("Similarly, when an amended complaint is properly filed, a defendant's answer to the original complaint is superseded."). Once Plaintiff filed the first amended complaint, Defendant Lane was free to answer, move, or otherwise respond. The original answer was no longer at issue in the case. Indeed, if Defendant Lane had failed to file any answer or motion in

response to the amended complaint, Plaintiff may have moved for an entry of default. *See, e.g.*, *Cooper v. Regent Asset Mgmt. Solutions-Kan., LLC*, 2012 WL 3238139, at *2–*3 (D. Kan. 2012) (considering whether to set aside default and allow the defendants to belatedly answer an amended complaint because the defendants erroneously believed they did not need to file a new answer to an amended complaint, as they had already answered the original complaint).

For these reasons, Defendant Lane's motion to dismiss is not untimely, and the Court will consider the merits of the motion. The cases that Plaintiff cites in opposition are distinguishable on the facts and do not merit further discussion here. *See Swearingen*, 189 F. Supp. 2d 1189 (after a defendant answered an original complaint, defendant filed a motion to dismiss—which was eventually applied to an amended complaint without requiring refiling of the motion—and the court treated the motion to dismiss as a motion for judgment on the pleadings because an answer had been filed); *Humes*, 2019 WL 1596759 (defendants filed an answer to an amended complaint, and later moved to dismiss the same amended complaint).

Because the Court accepts Defendant Lane's Rule 12(b)(6) motion as timely-filed, the Court need not address Plaintiff's arguments about Defendant Lane's motion alternatively being a motion for judgment on the pleadings.

### B.     Federal Claims

#### 1.     Section 1983 Claims Against Defendant Lane – Official Capacity and Eleventh Amendment Immunity

The Court first addresses the § 1983 claims against Defendant Lane in his official capacity. To the extent that Plaintiff brings claims for damages against Defendant Lane, they are barred by the Eleventh Amendment. To the extent that Plaintiff seeks injunctive relief (as Plaintiff indicates in his response that he seeks to "injunctively prevent further constitutional violations upon Plaintiff under color of state law," Doc. 81 at 38), Plaintiff fails to allege a case or controversy.

A suit against a state official in his official capacity is generally treated as a suit against the state. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Defendant Lane, as the Chief Deputy County Attorney, is an officer of the state. *Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1215–16 (D. Kan. 1999) (citation omitted).

The Eleventh Amendment protects nonconsenting states from federal lawsuits filed by private individuals. *Bd. of Trs. of the Univ. of Ala.*, 531 U.S. 356, 363 (2001). This immunity protects not only states, but also state agencies and state officials sued in their official capacities. *Kentucky*, 473 U.S. at 169. The immunity applies to claims for damages. *Id.*

An exception to this rule—an exception that Plaintiff attempts to invoke—is when the complaint seeks only prospective injunctive relief against state officials for an ongoing federal violation. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997). This exception is known as the *Ex parte Young* exception, after the case by the same name, 209 U.S. 123 (1908). But the *Ex parte Young* exception is not without limitations:

> First, there must be an "ongoing violation of federal law." *Johns [v. Stewart]*, 57 F.3d [1544,] 1552 [(10th Cir. 1995)]. Second, "[i]t applies only to prospective relief" and may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past. *Puerto Rico Aqueduct v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993). Finally, it "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Id.*

*Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).

Plaintiff attempted to bring his claims within these boundaries by seeking prospective relief. The problem with Plaintiff's attempt, however, is that Plaintiff does not adequately allege an ongoing violation of federal law. Plaintiff's hospitalization was a one-time incident spanning

about a week in 2018. The civil action initiated by Defendant Lane was dismissed. Plaintiff has not been billed costs for it. There are no well-pleaded facts suggesting that there is any danger of a continuing violation of federal law.

To satisfy Article III's "case or controversy" requirement, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (citations omitted) (internal quotations omitted). When a plaintiff "allege[s] only a single, past statutory violation and does not assert any likelihood that he will be subjected to a similar violation in the future," his "allegations are . . . insufficient under well-established law to support standing to seek an injunction." *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998).

Like all federal lawsuits, suits brought under the *Ex parte Young* exception to Eleventh Amendment Immunity remain subject to the constitutional case-or-controversy requirement. Plaintiff's fear that he may later be subject to "further constitutional violations" is insufficient to plead a case or controversy. Neither does his unsubstantiated fear that others may be involuntarily committed under circumstances similar to his. And his unsupported allegation that something similar happened to R.K. is also insufficient. Plaintiff has failed to allege an ongoing violation of federal law or an imminent injury in connection with his prospective claims. He therefore lacks standing and cannot invoke the *Ex parte Young* exception to Eleventh Amendment immunity.

Because Defendant Lane is entitled to Eleventh Amendment immunity for the claims against him in his official capacity, the Court lacks jurisdiction over these claims. The Court therefore dismisses Plaintiff's official capacity § 1983 claims against Defendant Lane without prejudice. *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cty., Okla. v. Guthrie*, 654

F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds . . . must be without prejudice.") (citations omitted); *Shikles v Sprint/United Mgmt. Co.*, 426 F.3d 1317–18 (10th Cir. 2005) (holding that when the court lacked jurisdiction, the district court should have ordered dismissal rather than entering summary judgment) (*abrogated on other grounds by Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

### 2.   Section 1983 Claims Against Defendant Lane – Individual Capacity, Prosecutorial Immunity, and Qualified Immunity

Prosecuting attorneys are protected by absolute immunity against § 1983 claims arising from their role as an advocate in judicial proceedings. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). But when prosecutors take action in an administrative or investigative role, they may only be entitled to qualified immunity (instead of absolute). *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993). For example, a prosecutor loses absolute immunity when he acts as a complaining witness. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

Nearly all of Plaintiff's allegations against Defendant Lane fall under the umbrella of advocacy. As noted above and summarized here, Plaintiff claims that Defendant Lane:

- Initiated civil commitment proceedings;

- Swore to probable cause for emergency need of involuntary commitment of Plaintiff on February 5, 2018 (likely Plaintiff meant February 2), when Plaintiff was not within his jurisdiction;

- Obstructed Plaintiff's counsel of choice;

- Facilitated "concealed secondary prosecution of the same in another county without advising Plaintiff's attorney";

- Terminated proceedings through ex parte communications with the court; and

- Failed to correct mistakes in his records upon discovery.

The above actions, with the possible exception of the second one listed, are related to Defendant Lane's role as an advocate for the county. Defendant Lane is protected by absolute immunity for

these actions—even if they were taken, as Plaintiff claims, in the context of malicious prosecution. *Collins v. Johnson Cty.*, 56 F. App'x 852, 854 (10th Cir. 2002). Absolute immunity applies to the initiation of court proceedings, even if initiated without probable cause. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). Absolute immunity still applies to the initiation and pursuit of proceedings when the attorney fails to adequately investigate documents that are the foundation for the proceedings. *Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000). And the presentation of evidence is protected. *Burns v. Reed*, 500 U.S. 478, 491 (1991). This is true even if the evidence is perjured or suppressed. *Esquibel v. Brian Williamson*, 421 F. App'x 813, 816 (10th Cir. 2010). At least five of Plaintiff's six allegations against Defendant Lane fall within these boundaries.

As for the second act listed above, Plaintiff claims that there is no "absolute immunity for prosecutors when signing sworn statements or petition[s] pursuant to witness or investigatory duties . . . ." Doc. 81 at 21 n.71. But regardless of whether absolute immunity applies, Defendant Lane raised qualified immunity. Plaintiff did not respond to Defendant Lane's qualified immunity arguments. Once a defendant raises qualified immunity, the plaintiff bears the burden of showing that a reasonable official would have known that he was violating clearly established law. *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016). By ignoring Defendant Lane's assertion of qualified immunity, Plaintiff failed identify any relevant, particularized precedent that would have made a reasonable official realize that his actions would violate Plaintiff's rights. *See Arnold v. City of Olathe, Kan.*, 413 F. Supp. 3d 1087, 1107 (D. Kan. 2019).

The immunities acknowledged above apply to the individual capacity claims against Defendant Lane in both Counts II and III. When a prosecutor is protected from liability under § 1983, he is also protected from a conspiracy claim. *Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1216 (D. Kan. 1999) (citing *Dennis v. Sparks*, 449 U.S. 24, 26–27 (1980)); *see also Schamp*

*v. Shelton*, 2006 WL 2927523, at *5 (D. Kan. 2006) (discussing collected cases). These dismissals are with prejudice. Absolute immunity entitles a defendant to dismissal with prejudice. *Glaser v. City & Cnty. of Denver*, 557 F. App'x 689, 705–06 (10th Cir. 2014) (affirming dismissal with prejudice of claims for absolute immunity). And in this instance, the Court also finds it appropriate to dismiss with prejudice the claim for which Defendant Lane has qualified immunity; Plaintiff entirely failed to respond to the defense despite having ample time and opportunity to do so.

### 3.    RICO Allegations Against All Defendants

The Court next turns to Plaintiff's RICO allegations. RICO "prohibits certain conduct involving a 'pattern of racketeering.'" *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006). "One of RICO's enforcement mechanisms is a private right of action, available to any person injured in his business or property by reason of a violation of [ ] RICO's substantive restrictions." *Id*. (internal quotations and citations omitted). To plead a violation of RICO, a plaintiff must allege that a defendant: "(1) conducted the affairs; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (internal citations omitted).

Defendants argue that Plaintiff's RICO claims fail for at least three reasons: (1) Plaintiff fails to plead the existence of an enterprise; (2) Plaintiff has failed to adequately allege valid predicate acts; and (3) Plaintiff has not adequately alleged a pattern of racketeering. Any one of these arguments can independently sink Plaintiff's RICO claims. The Court addresses the first and third arguments because they are similar and overlap to some degree.

### a.    Enterprise

RICO's requirement that an enterprise exist has three components: "(1) that there is an ongoing organization with a decision-making framework or mechanism for controlling the group,

13

(2) that various associates function as a continuing unit, and (3) that the enterprise exists separate and apart from the pattern of racketeering activity." *See Kearney v. Dimanna*, 195 F. App'x 717, 720–21 (10th Cir. 2006) (citation omitted). Defendants take issue with the continuous nature of any "unit" that may exist. There must be some longevity to the association, *Boyle v. United States*, 556 U.S. 938, 944 (2009), and Defendants contend that such longevity is completely lacking here. A singular event does not support the existence of an enterprise. *United States v. Cianci*, 378 F.3d 71, 82 (1st Cir. 2004) ("Something more must be found—something that distinguishes RICO enterprises from ad hoc one-time criminal ventures."); *Montesano v. Seafirst Commercial Corp.*, 818 F.3d 423, 427 (5th Cir. 1987) ("[I]ndividuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two [or more] predicate acts during the commission of this offense, because their relationship to one another has no continuity.").

Plaintiff fails to adequately allege that Defendants engaged in a continuing enterprise— one that existed beyond the circumstances of this case. As explained in his response brief (but not in the amended complaint), Plaintiff alleges the enterprise in this case as follows: "Defendants are a 'supply chain' of organizations or individuals connected by a common goal of creating a market for human bondage via exploitation of the Kansas Care and Treatment of Mentally Ill Persons Act's apparent immunity against Fourth Amendment violations and other civil rights deprivations." Doc 81 at 28. Plaintiff alleges (again, in his response—not the amended complaint) that Defendants were a "Syndicate," but this unsupported allegation is nothing more than an inflammatory, conclusory label. Plaintiff has not offered <u>facts</u> to show a relationship between the parties beyond the scope of their discrete efforts here to involuntarily admit Plaintiff to LSH. *See Kearney*, 195 F. App'x at 720 (finding no association-in-fact where the plaintiff failed to allege

facts showing that the alleged enterprise "had any existence or purpose outside of the alleged malicious prosecution and intimidation of Kearney to prevent him from continuing to expose the supposed illegal activity and cover-up pertaining to Mena's death"). Plaintiff's amended complaint, even assuming the addition of the statements in his response brief, "fail[s] to show that, in the absence of the alleged malicious prosecution and scheme . . . against him, there would have been any association-in-fact at all among the Defendants." *Id.* at 721.

### b. Pattern of Racketeering Activity

Defendants identify two problems with Plaintiff's alleged pattern of racketeering activity: (1) the absence of multiple predicate acts; and (2) the absence of continued criminal activity. "[T]o prove a pattern of racketeering activity, plaintiffs must show (1) that the racketeering predicates are related and (2) that the predicates themselves amount to or otherwise constitute a threat of continued criminal activity." *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 223 F.R.D. 566, 608 (D. Kan. 2004) (citing *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989)). The elements of relationship and continuity are critical requirements for a RICO violation. *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928 (10th Cir. 1987). Here, the Court focuses on the lack of a threat of continued criminal activity.

"Courts generally agree that to make an adequate showing of continuity under *Sedima*, a plaintiff must demonstrate some facts from which at least a threat of ongoing illegal conduct may be inferred." *Edwards v. First Nat'l Bank, Barklesville, Okla.*, 872 F.2d 347, 351 (10th Cir. 1989) (discussing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1986)). "A scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished." *Id.* "[I]t is well established that a single scheme to accomplish one discrete goal,

directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing racketeering activity." *Pagel v. Washington Mut. Bank, Inc.*, 153 F. App'x 498, 502 (10th Cir. 2005). "'Continuity' is both a closed-ended and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Waddell & Reed Fin., Inc.*, 223 F.R.D. at 608 (D. Kan. 2004) (internal citation omitted).

The element of continuity—whether closed-ended or open-ended—is wholly absent from this case. Plaintiff has alleged one scheme with one goal, directed at Plaintiff only, with no credible threat of extending to others. The acts occurred over a discrete, brief amount of time, and pose no fact-based threat of continuing. Plaintiff's efforts to explain the case differently are unavailing.

Plaintiff attempts to show continuity through four methods: (1) identifying "R.K." as another patient who was involuntarily committed at LSH; (2) recounting multiple bills received relating to his stay at LSH and the potential of having a lien placed on his property; (3) speculating about future possible bills for recovery of Harvey County court costs; and (4) speculating about the potential for "wide spread harm." None of these arguments is persuasive.

First, as to the allegations about R.K., Plaintiff has offered no facts suggesting that R.K.'s situation was like Plaintiff's. There is no allegation that R.K.'s hospitalization began in Harvey County or involved the same defendants.[3] The only factual allegation about R.K. is that he or she

---

[3] Plaintiff's amended complaint does allege specifically that Defendant Douglas McNett was also involved in R.K.'s case. Doc. 42 at 5. And in his response brief, Plaintiff indicates that Doc. 16-4 in this case shows that Defendants Ide and Hon were also involved with R.K. But Doc. 16-4 is a document about Plaintiff's involuntary commitment. The Court fails to see how it shows that Defendants Ide and Hon were also involved with R.K. And Plaintiff's single allegation that Defendant McNett (who has not even been served in this case) also acted in Pawnee County in R.K.'s case is insufficient to show continuity. Defendant McNett was the Pawnee County attorney; the Court would expect him to be involved in other involuntary commitment cases.

was involuntarily hospitalized at the same time[4] as Plaintiff. This is not enough to infer a wide-spread, continuing enterprise.

Second, as to the billing statements for Plaintiff's stay at LSH, these also do not demonstrate continuity. The billing statements related to Plaintiff's single hospitalization at LSH. *See Sutherland v. O'Malley*, 882 F.2d 1196, 1205 n.9 (7th Cir. 1989) ("[A] multiplicity of mailings does not necessarily translate into a 'pattern' of racketeering activity.") (citation omitted). They have stopped since Plaintiff paid the bill. And it is pure speculation that Plaintiff may someday be subject to a lien for services he has not yet been billed for—now more than two years after the incident.

Third, as to the potential liability for court costs, Plaintiff has not alleged that the Harvey County District Court has taxed costs against him. The involuntary commitment proceeding was dismissed in 2018. It is simply not plausible that the possibility of future assessment of costs is anything more than speculation.

Fourth, as to the potential of "wide spread harm," this allegation (once again) is heavy with speculation and light with factual support. In fact, the Court finds no factual support for this allegation in Plaintiff's amended complaint. Conclusory allegations will not create a continuing enterprise.

c.      **Conclusion – RICO Claims**

In summary, Plaintiff has not adequately alleged an enterprise or a pattern of racketeering. RICO was not intended to address disagreement about medical or mental health treatment. It was not meant to remedy damages caused by short-term, isolated wrongs committed by disjointed individuals, each completing discrete jobs. Plaintiff's theory of an expansive scheme to

---

4      Plaintiff's response brief states that Plaintiff was roommates with R.K. at LSH. Doc. 81 at 8.

involuntarily treat patients using fraudulent civil commitment proceedings—all with a common

goal of collecting fees for unnecessary professional services—is simply not plausible or supported

by facts. As the Third Circuit has cautioned:

> Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are "related" by purpose and spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions [under RICO] dependent solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time. Given its "natural and common sense approach to RICO's pattern element," we think it unlikely that Congress intended RICO to apply in the absence of a more significant societal threat.

*Marshall-Silver Constr. Co., Inc. v. Mendel*, 894 F.2d 593, 5997 (3d Cir. 1990). The Court finds

no plausible societal threat here and dismisses Plaintiff's RICO claims. The Court dismisses these

claims with prejudice, as Defendants moved to dismiss Plaintiff's RICO claims in his original

complaint on the same basis. Docs. 18 at 6–8; 20 at 6–14. Plaintiff amended his complaint and still

was unable to state a claim for RICO violations. The Court therefore finds it appropriate to dismiss

these claims with prejudice.

### 4.    Claim Under EMTALA Against Defendant Prairie View

Plaintiff brings his EMTALA claim against Defendant Prairie View, claiming that

Defendant Prairie View "'dump[ed] Plaintiff onto [LSH] 9 minutes after Prairie View's privileges

to bill to Plaintiff's health insurance were blocked pursuant to a fraud claim on February 1, 2018."

Doc. 81 at 44–45. There is at least one fatal flaw with Plaintiff's claim: Plaintiff was admitted to

Prairie View. EMTALA was not designed to address situations where a patient has been admitted

for inpatient care (as opposed to being seen in an emergency department). More specifically,

EMTALA "was not designed to provide a federal remedy for misdiagnosis or general

malpractice." *Griffith v. Mt. Carmel Med. Ctr.*, 831 F. Supp. 1532, 1539 (D. Kan. 1993) (quoting *Brooks v. Md. Gen. Hosp., Inc.*, 996 F.2d 708, 710 (4th Cir. 1993) and citing *Stevison by Collins v. Enid Health Sys., Inc.*, 920 F.2d 710, 713 (10th Cir. 1990) and *Stewart v. Myrick*, 731 F. Supp. 433, 435–36 (D. Kan. 1990)); *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994) (holding that EMTALA "is neither a malpractice nor a negligence statute"). Rather, Congress enacted the statute "in response to a growing concern that hospitals were 'dumping' patients unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their emergency conditions were stabilized." *Griffith*, 831 F. Supp. at 1538–39 (citations omitted). EMTALA requires proper medical screening by a hospital emergency department and stabilization of a patient with an emergency medical condition before the patient may be transferred or discharged. *See* 42 U.S.C. § 1395dd(a)-(c).

EMTALA ceases to apply, however, when a patient is admitted to a facility. *See, e.g.*, 42 C.F.R. § 489.24(a)(1)(ii) ("If the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under this section ends . . . ."); 42 C.F.R. § 489.24(d)(2)(i) ("If a hospital has screened an individual under paragraph (a) of this section and found the individual to have an emergency medical condition, and admits that individual as an inpatient in good faith in order to stabilize the emergency medical condition, the hospital has satisfied its special responsibilities under this section with respect to that individual."); *Bryant v. Adventist Health Sys.*, 289 F.3d 1162, 1168 (9th Cir. 2002) ("We hold that EMTALA's stabilization requirement ends when an individual is admitted for inpatient care."); *Thornill v. Jackson Parish Hosp.*, 184 F. Supp. 3d 392, 398 (W.D. La. 2016) ("[A] hospital's duty under the statute ends when the hospital admits the patient for inpatient care so long as the admittance is in good faith and not a subterfuge to escape liability under EMTALA."); *Lopez v. Contra Costa Reg. Med. Ctr.*, 903 F. Supp. 2d 835, 842 (N.D. Cal.

19

2012) ("These requirements do not establish a cause of action for failure to transfer an admitted hospital patient . . . ."); *Scott v. Hutchinson Hosp.*, 959 F. Supp. 1351, 1359 (D. Kan. 1997) ("[T]he court concludes that once the patient has been screened properly in an emergency room . . ., admitted to the hospital for treatment, and is receiving treatment, the transfer provisions do not apply."); *Walley v. York Hosp.*, 2018 WL 3614967, at *2-*3 (D. Maine. 2018). *But see Moses v. Providence Hosp. & Med. Ctr.*, 561 F.3d 573, 583-84 (6th Cir. 2009).

Plaintiff urges the Court to apply the rationale of the Sixth Circuit in *Moses* instead of that of the other cases and federal regulations cited above. The Court declines to do so. The other cases cited represent the majority position. *Thornhill*, 184 F. Supp. 3d at 400. To apply the requirements of EMTALA once a patient has been admitted for treatment (but not for an emergency medical condition) stretches the reach of the statute beyond its language. Here, Plaintiff was admitted voluntarily. He claims that "it is clear Plaintiff did not admit to Prairie View on January 29, 2018 for an emergency condition." Doc. 81 at 45. He then requested release from Prairie View but also seems to suggest that he was not stabilized before being "dumped" on LSH. Simply put, these allegations do not support a claim under EMTALA. Dismissal of this claim is with prejudice, as it is uncontroverted that Plaintiff admits he was voluntarily admitted to Prairie View. As a matter of law, therefore, he cannot state a claim under EMTALA.

## C.    State-Law Claims

Plaintiff's remaining claims arise under state law: malicious prosecution; assault; battery; false imprisonment; defamation; invasion of the right to privacy; and outrage. A court has discretion to exercise supplemental jurisdiction over state-law claims that derive from "a common nucleus of operative fact" as a pending federal claim. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997); *see also* 28 U.S.C. § 1367(a). In deciding whether to exercise

supplemental jurisdiction over state-law claims, a court should consider whether the values of judicial economy, convenience, and fairness would be served by retaining jurisdiction. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). A district court may decline supplemental jurisdiction when the claims over which it had original jurisdiction have been dismissed. *See, e.g.*, *Exsum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004); *Heffington v. Derby United Sch. Dist.*, 260, 2011 WL 5149257, at *3 (D. Kan. 2011). Here, the proceedings are at an early stage (despite pending for a lengthy amount of time) and the remaining causes of action—following dismissal of Plaintiff's federal claims—are purely state-law claims. Considering the various factors, therefore, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. These claims are dismissed without prejudice for lack of jurisdiction.

### D.      Plaintiff's Sur-Reply Requests

In Plaintiff's response brief, he repeatedly asks that the Court permit him to file a sur-reply. This request is denied. The Court ordinarily does not permit sur-replies—particularly when Plaintiff did not even see Defendants' reply briefs before seeking leave to file a sur-reply. Here, a sur-reply is even less appropriate, when the Court specifically advised Plaintiff during the March 4, 2020 phone conference that his "comprehensive responses should include any and all procedural and substantive arguments for the Court's consideration, even if argued in the alternative." Doc. 73. The Court intended to make clear that Plaintiff should not expect to engage in further briefing on these motions.[5]

---

[5]   This case was transferred to the undersigned judge on February 21, 2020. The Court initiated the March 4 phone conference to address concerns about the length of time the case and the motions to dismiss had been pending, as well as the content of Plaintiff's original responses to the motions to dismiss.

E.       **Unserved Defendants**

The resolution of these two motions leaves no served defendants remaining in the case. There are, however, five unserved defendants: Douglas McNett, Michael Burke, Stacy Parr, Donald Sapp, and Heather Helvie. Plaintiff has indicated his desire to dismiss Heather Helvie as a defendant, and the Court grants that request. Doc. 81 at 24. This leaves four unserved defendants. The Court dismisses the claims against them for the same reasons the Court has dismissed all other claims in this case. *See Smith v. Cooper*, 2012 WL 1094431, at *5 (N.D. Cal. 2012) ("[S]ummary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed and (3) Plaintiff has been provided an opportunity to address the controlling issues.") (citation omitted). This is appropriate for several reasons.

First, the unserved defendants are similarly-situated to the dismissed defendants. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008); *see also Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1344 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); *Soto v. Warden of Salinas Valley State Prison*, 2016 WL 3661384, at *9 (N.D. Cal. 2016) ("Based on the foregoing, the Court sua sponte grants summary judgment in favor of Defendant SVSP Warden on the basis of facts presented by other Defendants who have appeared, showing that Plaintiff failed to administratively exhaust any of the claims in this action, including the claim against Defendant SVSP Warden."); *Gibbs v. Ocwen Loan Servicing, LLC*, 2014 WL 4414809, at *9 (N.D. Tex. 2014) ("The Fifth Circuit has recognized that, when one defending party establishes that the plaintiff has no cause of action, this defense

generally inures also to the benefit of other similarly situated defendants." (citation omitted));
*Young v. Smith*, 2014 WL 517502, at *6 (D. Idaho 2014) ("Because the fact that Plaintiff did not exhaust his current claims applies to all Defendants, however, a dismissal here accrues to any unserved Defendants, including Eliason. Such a dismissal of unserved defendants is particularly appropriate where there is little to no factual distinction between the defendants, and relief as to some defendants effectively means relief as to all." (citation omitted)).

Second, Plaintiff has had a full and fair opportunity to explain to the Court why his claims should survive dismissal. The issues have been fully briefed and Plaintiff has been given multiple opportunities to perfect his response to Defendants' arguments. The claims against the unserved defendants are subject to the same arguments; Plaintiff's RICO and § 1983 allegations are the same, and, in the absence of viable federal claims, the Court would also decline to exercise jurisdiction over the state-law claims.

Third, Plaintiff has already exceeded the allowed time to serve the remaining defendants and has not sought an extension. There is no need to further delay this case by several months so that these defendants can be served with process, retain counsel, and file their own motions to dismiss, asserting the same reasons already raised here. *Williams v. Kernan*, 2019 WL 1207454, at *8 (N.D. Cal. 2019). This case has been pending for well over a year with no substantial progress. Many, but not all, of the delays have been at Plaintiff's request. *See, e.g.*, Docs. 25; 27; 29; 58; 63; and 66. And "in many cases, it may be that by the time the court has entered final judgment as to all served defendants, service on the unserved defendants would be untimely" and "[i]n those circumstances, the court's judgment as to all served defendants 'effectively terminates' the plaintiff's litigation." *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 155 (D.D.C.

2016) (quoting *Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001)) (additional citation omitted).

Finally, the Court notes that any other outcome would be inconsistent with Fed. R. Civ. P. 1. Plaintiff has had a full opportunity to litigate all his claims against other defendants in this case and failed to win. A contrary result would require the unserved parties, and the Court's limited resources, to litigate the same issue (potentially over and over), as Plaintiff engages in tardy and piecemeal service. This is neither desirable nor consistent with Rule 1.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant Lane's Motion to Dismiss (Doc. 55) is GRANTED. Plaintiff's claims against Defendant Lane are DISMISSED. The federal claims against Defendant Lane in his official capacity are DISMISSED WITHOUT PREJUDICE. The federal claims against Defendant Lane in his individual capacity are DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendant Lane, and they are DISMISSED WITHOUT PREJUDICE.

THE COURT FURTHER ORDERS that Prairie View Defendants' Motion to Dismiss (Doc. 50) is GRANTED. Plaintiff's federal claims against Defendants Prairie View, Hon, Fast, and Ide are DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendants Prairie View, Hon, Fast, and Ide, and they are DISMISSED WITHOUT PREJUDICE.

THE COURT FURTHER ORDERS that all claims against the unserved defendants are DISMISSED. Consistent with the treatment of claims against the served defendants, the federal claims against the unserved defendants in their official capacities are DISMISSED WITHOUT PREJUDICE. The federal claims against the unserved defendants in their individual capacities are

DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against the unserved defendants, and they are DISMISSED WITHOUT PREJUDICE.

The case is closed.

IT IS SO ORDERED.


Dated: April 27, 2020                                    /s/  Holly L. Teeter
                                                        HOLLY L. TEETER
                                                        UNITED STATES DISTRICT JUDGE